## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY PENSION FUND,**

              **Plaintiff,**

      v.

**LYKINS REINFORCING, INC.,**

              **Defendant.**

              **Case No. 3:20-cv-00007**
              **JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

Iron Workers District Counsel of Southern Ohio & Vicinity Pension Fund (the "Fund") sued Lykins Reinforcing, Inc. alleging that Lykins failed to make required contributions to the Fund, which the Fund claims violated the Employee Retirement Income Security Act of 1974 ("ERISA"), and seeking to recoup the money it is supposedly owed. Before the Court are two motions—first, Lykins' Motion To Dismiss Or, In The Alternative, Compel Arbitration And Stay The Action (Doc. 3), and second, the Fund's Motion and Memorandum In Support [Of Leave] To [File A] Sur-Reply (Doc. 7). To the extent the Fund's Sur-Reply seeks to clarify the type of relief the Fund requests, the Court **GRANTS** the motion for leave to file (Doc. 7). Also, for the reasons explained more fully below, the Court **DENIES** Lykins' Motion to Dismiss or Compel Arbitration (Doc. 3), but **ORDERS** the Fund to file an Amended Complaint consistent with the representations made in its Sur-Reply.

## BACKGROUND[1]

Pursuant to an Agreement and Declaration of Trust various labor organizations and employers affiliated with the participating unions created the Fund at issue on October 30, 1962. (Compl., Doc. 1, ¶ 2, #1–2). Because multiple collective bargaining agreements, labor organizations, and employers maintain the Fund, it is considered a multiemployer plan under Sections 3(37)(A) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37)(A) and 1301(a)(3). (*Id.* at ¶ 9–10, #3). This Fund, created to provide pension, retirement, and death benefits for participating employees and their beneficiaries, is considered an "employee benefit pension plan" under Section 3(2) of ERISA, 29 U.S.C. § 1002(2). (*Id.* at ¶ 3, #2).

Lykins Reinforcing, Inc., considered to be an "employer" bound by a participation agreement, had to make contributions to the Fund according to either the Fund Agreement itself or an applicable collective bargaining agreement. (*See id.* at ¶¶ 4, 11–12, #2–4). The Fund alleges that Lykins stopped making these required contributions, while at the same time continued to perform work of the type for which contributions were required to be made. (*Id.* at ¶ 19, #5). In fact, Lykins has not contributed to the Fund since 2018, which the Fund claimed constituted a "complete withdrawal" from the Fund. (*Id.* at ¶¶ 18–19).

On April 12, 2019, the Fund sent Lykins a letter notifying it about this supposed complete withdrawal. (*Id.* at ¶ 21). The Fund stated that it had assessed Lykins' withdrawal liability to be $302,728 and included an explanation on how it

---

[1] Because this is a motion to dismiss, the facts are taken from the Fund's Complaint and assumed to be true. *See Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).

reached that total. (*Id.* at ¶¶ 20–21; *see also* Withdrawal Liability Assessment, Doc. 1-3, #37–43). If Lykins wished, the Fund explained, it could pay the withdrawal liability in quarterly installments of $30,852.23. Yet, either way Lykins' initial installment payment towards the withdrawal liability would be due no later than 60 days after the date of the letter. (Compl. at ¶ 23, #5–6). That gave Lykins until June 11, 2019, to make some form of payment towards the withdrawal liability. (*Id.* at ¶ 25, #6). The Fund explained that Lykins could request, in writing, a review of the withdrawal liability pursuant to Section 4219(b)(2) of ERISA, 29 U.S.C. § 1399(b)(2), but that it still had to make payments on the withdrawal liability. (*Id.* at ¶¶ 22, 24, #5–6). Lykins needed to request that review no later than 90 days after the date it received the Fund's demand letter. (*See* Withdrawal Liability Assessment at #39).

June 11 came and went without Lykins submitting any payment to the Fund. As a result, the Fund sent Lykins two more letters demanding payment. The Fund sent the first letter on June 21, 2019. (*See* Compl. at ¶ 26, #6; June 21 Demand Letter, Doc. 1-4, #45–53). The letter said it served "as the Pension Fund's written notification pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), that Lykins has failed to make the required payments on the Withdrawal Liability Amount." (June 21 Demand Letter at #45). Lykins received this June 21 letter on June 27, 2019, according to the United States Postal Service tracking information. (Compl. at ¶ 26, #6). After still not receiving any payment or correspondence from Lykins, the Fund sent Lykins a second letter dated July 8, 2019, again demanding payment towards

the withdrawal liability. (*Id.* at ¶ 27; *see also* July 8 Demand Letter, Doc. 1-5, #55–62).

A couple of days later, on July 10, 2019, Lykins finally responded. (*See* Compl. at ¶ 28, #6; *see also* Lykins' July 10 Letter, Doc. 1-6, #64–66). In the letter, Lykins stated that it was requesting a review of the Fund's calculation of the withdrawal liability. Specifically, Lykins wanted a review of (1) the amount of unfunded vested benefits allocated to Lykins as a consequence of the withdrawal; (2) the appropriate date of withdrawal; (3) the determination of Lykins' liability; and (4) the schedule of payments. (Lykins' July 10 Letter at #64). Lykins explained that, even though it had been a few months since the Fund heard from Lykins, Lykins' request was timely since Lykins received the Fund's April 12 demand letter on May 1, 2019, and had until August 1, 2019, to request such a review. (*Id.*).

Despite sending this letter to the Fund, Lykins did not remit any payment. The Fund alleges that Lykins' initial installment payment on the withdrawal liability Assessment was due 60 days after May 1, 2019, which would have been July 1, 2019. (Compl. at ¶ 29, #7). And, even if the July 8, 2019 demand letter set a new 60-day deadline for Lykins' payment, Lykins' initial installment payment of $30,852.23 was then due by September 6, 2019. (*Id.*). Lykins missed both deadlines. (*See id.* at ¶ 30).

Because Lykins failed to make the installment payments, the Fund considered Lykins to be in default. (*See id.* at ¶ 31). The Fund sent Lykins a letter, dated September 9, 2019, notifying Lykins about the default, and demanding that it cure this default within 60 days. (*Id.*; *see also* Default Letter, Doc. 1-7, #68–73). Since

4

Lykins received the Default Letter on September 12, 2019, according to the Post Office tracking information, Lykins had until November 11, 2019, to cure that default by paying the installment payment. (Compl. at ¶ 32, #7; *see also* Default Letter at #71–73). The letter notified Lykins that, if Lykins did not cure the default within the 60-day window, the entire withdrawal liability Assessment amount would be immediately due. (Default Letter at #69).

To date, Lykins has not made any payments toward the withdrawal liability. (Compl. at ¶ 34, #7). Because Lykins failed to make any payments, and therefore failed to cure its default, the Fund alleges that Lykins now owes the Fund the entire withdrawal liability assessment, $302,728, together with interest, liquidated damages, penalties, and attorneys' fees and costs. (*Id.* at ¶¶ 41–43, #9).

## PROCEDURAL HISTORY

The Fund initiated this action on January 9, 2020, seeking not only to compel Lykins to make interim payments, but also to recoup the entire withdrawal liability amount because of Lykins' default. (*See generally* Compl. at #1–10). In response, Lykins filed the instant Motion about a month later, on February 5, 2020. Lykins asks the Court to either dismiss the Fund's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or in the alternative, grant Lykins' motion to compel arbitration and stay the case. (*See* Doc. 3). The Fund subsequently filed a motion for leave to file a sur-reply, claiming that it wished to clarify the relief it was seeking and correct misstatements and mischaracterizations Lykins

5

supposedly made in its reply brief. (*See* Doc. 7). Lykins' Motion to Dismiss and the Fund's Motion to File a Sur-Reply are currently before the Court.

## LAW AND ANALYSIS

In its motion, Lykins contends that the Fund is seeking to proceed in the wrong forum. More specifically, Lykins claims the Court must dismiss the current action, or at the very least suspend consideration of it, given Lykins' demand that the parties arbitrate Lykins' withdrawal liability. The Court concludes that Lykins would be correct in its argument, if the Fund were pursuing this action to establish Lykins' withdrawal liability, or to accelerate the payment of that overall withdrawal liability amount. The Fund responds, however, that it is not seeking that remedy through this action, but rather only an order that Lykins make certain interim payments while the arbitration is pending. For the reasons set forth below, the Court concludes that it can consider that issue, notwithstanding Lykins' demand for arbitration. Explaining why that is the case, though, requires the Court to start with some basic background on ERISA and the provisions implicated here, before exploring in detail how those provisions impact this case.

### A.      Background On ERISA.

Congress enacted the Employee Retirement Income Security Act ("ERISA") in 1974. *See* 29 U.S.C. § 101–1371. Congress' purpose behind ERISA was to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 375

(1980). Unfortunately, this statute had practical issues as written. Specifically, it turned out that ERISA did not adequately address the adverse consequences that occur when employers withdraw from multiemployer pension plans. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984). A congressional study showed that ERISA's pension plan termination program incentivized employers to withdraw from financially weak plans. *See Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988). The threat of significant employer withdrawals imperiled the solvency of the Pension Benefit Guaranty Corporation ("PBGC"), the entity ERISA created to provide benefits to plan participants when a pension plan was terminated without sufficient assets to cover guaranteed benefits. *Id.* (citing *R.A. Gray*, 467 U.S. at 721).

Reacting to these problems, Congress amended ERISA by enacting the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"). *See* 29 U.S.C. §§ 1381–1461. The MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits, also known as the employer's "withdrawal liability." *R.A. Gray*, 467 U.S. at 725; *see also Mason & Dixon*, 852 F.2d at 158. The statutory scheme Congress enacted in the MPPAA is both "lengthy and complex." *Marvin Hayes Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 814 F.2d 297, 299 (6th Cir. 1987).

For this case, we need only focus on the withdrawal liability calculation and dispute resolution provisions pertinent to the issues raised here. Those provisions

provide a robust procedure for determining withdrawal liability, notifying the employer about that liability, and managing any disputes that arise along the way. To start, once the plan sponsors determine that an employer has completely or partially withdrawn from a pension plan, then they must compute the withdrawal liability the employer owes the fund, notify the employer of that amount, prepare a schedule for liability payments, and demand payment in accordance with the schedule. 29 U.S.C. §§ 1382, 1391, 1399(b)(1). ERISA then provides for two stages of dispute resolution procedures. These procedures are extensive and specific, recognizing that "the employer and the Plan may not always be in agreement as to the computation of withdrawal liability." *Marvin Hayes*, 814 F.2d at 299.

First, the parties must try to work things out themselves. Within 90 days of receiving the fund's notice, the employer may ask the plan sponsors to (1) review any specific matter relating to how they calculated the employer's liability and created the schedule of payments, (2) identify any inaccuracy in the plan sponsors' determination of the unfunded vested benefits allocable to the employer, and (3) furnish any additional relevant information to the plan sponsors. 29 U.S.C. § 1399(b)(2)(A). After a reasonable review of any matter the employer raised, the plan sponsors must notify the employer of its decision, the basis for the decision, and the reason for any change in the plan sponsors' determination of the employer's liability or schedule of liability payments. *Id.* at § 1399(b)(2)(B).

Second, if either party disputes the outcome after completing this process, § 1401 sets out how the parties can initiate arbitration. Section 1401 requires that

"any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *Id.* at § 1401(a)(1). If either party wants to initiate arbitration, § 1401(a)(1) provides that they may do so within a 60-day period after the earlier of the date the plan sponsors notify the employer under § 1399(b)(2)(B) or 120 days after the date the employer requests a review of the plan sponsors' withdrawal liability determination under § 1399(b)(2)(A). The parties can also jointly initiate arbitration within 180 days after the plan sponsors' demand under § 1399(b)(1). Neither party is required to initiate arbitration if they do not contest the plan sponsors' withdrawal liability assessment. If that is the case, and neither party initiates arbitration under § 1401(a)(1), then the amounts the plan sponsor demanded under § 1399(b)(1) "shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1).

While all this is happening, and the parties are working through the dispute resolution process, the employer must pay interim withdrawal liability payments. *See id.* at § 1401(d); *see also Mason & Dixon*, 852 F.2d at 160. Specifically, the employer has 60 days after receiving the plan sponsors' payment schedule under § 1399(b)(1) to begin making the interim payments, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). With that framework in mind, the Court turns to the instant case.

**B.   The Fund Can Seek Relief In This Court Requiring Lykins To Make Interim Withdrawal Liability Payments Pending The Arbitral Outcome.**

The Fund says it brought the instant suit to compel Lykins to pay the interim withdrawal payments that the Fund claims are due. Lykins, on the other hand, asserts that the Fund's argument that it is seeking to compel only interim payments is disingenuous, as the Fund actually wants Lykins to pay the entire withdrawal liability. And either way, Lykins contends that its demand initiating arbitration broadly divests the Court of jurisdiction to entertain this action. The Court disagrees both with Lykins' description of the suit (although that is largely due to clarifying information that the Fund has since provided), as well as Lykins' description of the extent of this Court's jurisdiction (in light of the Fund's clarifying information).

ERISA is a "pay now, dispute later" statute. *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 752 (6th Cir. 2013). This directive comes from two different provisions. *Id.* First, ERISA requires that "[w]ithdrawal liability *shall* be payable in accordance with the schedule set forth by the [fund] beginning no later than 60 days after the date of the demand." 29 U.S.C. § 1399(c)(2) (emphasis added). Second, the statute mandates that "[p]ayments *shall* be made by the employer … until the arbitrator issues a final decision with respect to the determination submitted for arbitration …." *Id.* at § 1401(d) (emphasis added).

In *Marvin Hayes*, the Sixth Circuit stressed the clarity of this statutory language: "It is *clear* that during the pendency of any dispute, however, interim payments of withdrawal liability must be made to the Plan." 814 F.3d at 299 (emphasis added). Further, "[i]t is *clear* from a reading of the statutory sections

10

dealing with withdrawal liability that the intent of Congress was to secure the funds as soon as possible and iron out the details and disputes later." *Id.* at 301 (emphasis added).

It follows, then, that the employer must pay interim payments until an arbitrator orders otherwise. This reading makes sense, given that "Congress foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability." *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 139 (3d Cir. 1997) (citing parenthetically Senate Comm. on Labor and Human Resources, Summary and Analysis of S. 1076, 96th Cong., 1st Sess. (1980), reprinted in Special Supp. 310, Pens. Rep. (BNA) 81, 84–85 (1980); H.R. Rep. No. 869, reprinted in 1980 U.S.C.C.A.N. at 2952).

The pay now, dispute later mentality also makes sense in light of ERISA's safeguards for when a fund incorrectly assesses the withdrawal liability. It is true the employer must continue making interim payments until the arbitrator issues a final decision. But if that final decision is in the employer's favor, then the employer receives a refund, plus interest, for the money it paid toward the withdrawal liability balance. *See* 29 U.S.C. § 1401(d) (explaining that the employer must make interim payments until the arbitrator issues a final decision, and, at that point, the parties can make any "necessary adjustments" for "overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination"). Along the same lines, even if an arbitrator does not find in the employer's favor, if the employer

has over-paid the money it owes, then "the plan sponsor shall refund the overpayment, with interest, in a lump sum." 29 C.F.R. § 4219.31(d).

In an effort to avoid application of the pay now, dispute later approach here, Lykins claims that the Sixth Circuit in *Findlay Truck* held that a court lacks jurisdiction to enter an order requiring an employer to make interim payments when arbitration has been timely demanded. (Def.'s Reply, Doc. 6, #207). In fairness to Lykins, there is some language in the decision that could be read that way, or at least could be read as saying that a court does not have authority to order the employer to make interim payments *until an arbitrator orders such relief. Findlay Truck*, 726 F.3d at 753 n.7 ("We interpret this to mean that our jurisdiction is limited to ordering the employer to make interim payments pursuant to an arbitrator's instructions. Interpretation of 'pay now, dispute later' falls within the arbitrator's jurisdiction.").

Importantly, though, the language on which Lykins relies was not part of *Findlay Truck*'s holding; that case instead reviewed a district court's decision *enjoining* a fund's efforts to collect interim payments. *Id.* at 753 ("[T]he MPPAA divests [the court] of jurisdiction to bar interim payments."). That is the exact opposite of the situation here, where the Fund seeks relief in the form of an Order *requiring* such payment.

Moreover, since *Findlay Truck*, other district courts in this Circuit have seemed to look past the precise language of the footnote. They have instead focused on the broader proposition that interim payments are mandatory while the arbitration is pending, and they have not hesitated to entertain cases seeking orders

12

to that effect. *See, e.g.*, *Pace Indus. Union-Mgmt. Pension Fund v. O.E. Clark Paper Box Co.*, No. 3:15-0163, 2016 WL 721428, at *7 (M.D. Tenn. Feb. 5, 2016) ("In view of the 'dispute now, pay later' scheme of the MPPAA, and the Sixth Circuit's decision in *Findlay Truck Line, Inc.*, the Court sees no reason why Plaintiffs cannot pursue, in the instant action, their claim for missed interim payments, even though the arbitration is pending."); *Operating Eng'rs Local 324 Pension Fund v. Waterland Trucking Servs., Inc.*, No. 2:18-cv-12638, 2019 WL 4511674, at *3–4 (E.D. Mich. Sept. 19, 2019) (stating that "[d]efendant must pay the withdrawal payments during the pendency of arbitration" and ordering that the payments be made); *Trs. of the Operating Eng'rs Local 324 Pension Fund v. Hayes Washed Sand & Gravel Co., Inc.*, No. 14-14906, 2015 WL 3868714, at *2 (E.D. Mich. June 23, 2015) ("The Sixth Circuit has addressed this precise question and has squarely held that defendants must make interim withdrawal liability payments under § 1401(d) during the pendency of arbitration.") (citing *Findlay Truck*, 726 F.3d at 753).

The statutory language at issue suggests that these courts correctly adopted this approach. Under ERISA, it is courts, not arbitrators, that bear responsibility for ordering interim payments. The ERISA provision requiring the employer to make interim payments until the arbitration concludes appears in § 1401(d). Yet, the provision requiring arbitration as the exclusive form of dispute resolution refers only to "determination[s] made under sections 1381 through 1399 of this title …." *See* 29 U.S.C. § 1401(a)(1) ("Any dispute … concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."). Under the

statute's plain language, ERISA does not require arbitrating disputes about an employer's obligation to make interim payments. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1014–19 (7th Cir. 2001) (explaining that, notwithstanding the fact that arbitration is pending, the court can require the employer to make interim payments).

Accordingly, the Court concludes that it has authority to entertain the Fund's Complaint, at least to the extent that the Fund is seeking relief in the form of interim payments. But the "at least" part of that previous sentence raises a second issue. As Lykins notes, the Complaint is ambiguous as to whether it seeks the interim payments, or rather payment of the entire alleged withdrawal amount. At some points the Complaint seems directed at the former (*see, e.g.*, Compl. at ¶ 1, #1 ("This suit seeks to recover delinquent withdrawal liability payments owed ….")), but elsewhere it seems to seek judgment for the entire withdrawal amount (*id.* at ¶ 43, #9 (alleging that Lykins "is liable to the Fund for the entire $302,728.00 Withdrawal Liability Assessment" and praying for relief in the form of a monetary judgment for that amount)).

In its proposed Sur-Reply, the Fund addresses that issue directly. The Fund makes clear that it understands that Lykins has a statutory right to arbitrate its overall withdrawal liability assessment. To that end, the Fund clarifies that its Complaint is "only seeking to recover Lykins' delinquent installment payments." (*See* Sur-Reply in Opp'n to Def.'s Mot. to Dismiss, Doc. 7-1, #215). It further offers to amend its Complaint to remove any ambiguity on that account. (*Id.*).

In the interests of promoting clarity, the Court accepts the Fund's offer. Thus, while the Court **DENIES** the motion to dismiss, it nonetheless **ORDERS** the Fund to file, within 14 days, an Amended Complaint consistent with the Fund's representation that this action is directed solely at interim payments.

In addition to moving to dismiss the action, Lykins also moved the Court to compel arbitration. To the extent that this request is directed at the interim-payment issue, the Court **DENIES** the motion for the reasons set forth above. (That is not to say that the arbitrator cannot reach that issue if the arbitrator believes it is appropriate, but rather to say that the Court will not stay or dismiss this action in favor of arbitration on that issue.) To the extent that Lykins' request is directed at the issue of overall withdrawal liability, the result may be different. But the Fund has clarified that it is not seeking to address that issue in this action, and that the Fund understands that the overall withdrawal-liability issue is instead arbitrable. Accordingly, the request to compel arbitration as to that issue is moot.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Fund's Motion for leave to file a sur-reply (Doc. 7), **DENIES** Lykins' Motion To Dismiss Or, In The Alternative, Compel Arbitration And Stay The Action (Doc. 3), but **ORDERS** the Fund to file an Amended Complaint, as explained above, within 14 days of the entry of this Order.

15

**SO ORDERED.**

September 3, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**